THE STATE, DEFENDANT IN ERROR, v. PETER ORRAYE, PLAINTIFF IN ERROR.

Submitted March 20, 1913—Decided June 3, 1913.

1. In charging the jury in a homicide case, the court, after giving proper instructions on the question of manslaughter, told the jury he could recall no evidence justifying a conviction of manslaughter. *Held*, a mere comment on evidence and not error.
2. An instruction that if the defendant was standing by and aiding and abetting, or taking part in a scheme to get possession of a property, even at the cost of the life of the decedent, the defendant would be guilty, even if he did not himself fire the fatal shot, is not erroneous.

On error to the Hudson County Court of Oyer and Terminer.

Before GUMMERE, CHIEF JUSTICE, and Justices BERGEN and KALISCH.

For the plaintiff in error, *Robert S. Hudspeth*.

For the state, *Pierre P. Garven*, prosecutor of the pleas.

The opinion of the court was delivered by

BERGEN, J. This is a strict writ of error brought to review the conviction of the defendant of murder in the second degree. The indictment charges murder, manslaughter and assault and battery, and an inference may be drawn from the testimony that the defendant with others broke into a room in a factory building where two persons, Joseph Couri and Edward Ged, his assistant, were sleeping; that the defendant repeatedly discharged a revolver into the room, one of the shots striking and killing Couri, and that the purpose of defendant and his companion was to obtain possession of the factory, which it was claimed was being unlawfully held by Couri and Ged for their employers.

The first point upon which the plaintiff in error relies is an alleged error in the charge of the court, the point urged being that the court, as stated in defendant's brief, "limited the jury to convicting the plaintiff in error of either murder in the first or second degree or assault and battery, debarring it from convicting him of the crime of manslaughter." The part of the charge which it is claimed sustains this objection is that the court after instructing the jury that they might convict of "either murder in the first degree, or of the second degree, or of manslaughter, or of assault and battery;" then proceeded, "there seems to be nothing in the case, so far as I recall, that would justify a conviction of manslaughter, which is where death results from a quarrel or fight, or where great anger or passion is aroused, and as the result of that passion or anger death is caused quickly and in passion. There seems to be nothing in this case that I can recall, showing there was any quarrel at the moment of the act from which this death resulted." This charge is not subject to the objection indicated by plaintiff in error. The jury was instructed that they might find the defendant guilty of manslaughter under this indictment, and the court only expressed the opinion that it recalled no evidence that would justify manslaughter, but, subsequently, apparently having its attention directed to the count in the indictment regarding manslaughter, further instructed the jury, "It is in your power under the indictment to find a verdict of manslaughter, if you think the evidence justifies it." This point is disposed of, contrary to the claim of the plaintiff in error, in *State* v. *Pulley,* 53 *Vroom* 580.

It is next argued that the court committed an error in defining the crime of murder in the first degree. The complaint seems to be that the court read to the jury the statute regarding murder, including what is there defined to be murder in the first degree, by means of poisoning or lying in wait or by any kind of willful, deliberate or premeditated killing. The objection now made is that as there was no proof of poisoning or lying in wait, it was improper to include these elements in the definition of murder in the first

degree.   I find it difficult to understand what the plaintiff in error conceives to be the error in this part of the charge. What the brief says is that the court, after quoting some of the evidence, instructed the jury that if it determined that the plaintiff was the man who killed Couri, then the jury must determine whether he did so "deliberately, willfully and premeditatedly," and if the jury were convinced of this, then it would be murder in the first degree, but if not satisfied that it was premeditated, but the evidence satisfied the jury that he shot not with premeditation, but intended to do the deceased a personal harm and with that intent he did the shooting and killing, that would be murder in the second degree., This the plaintiff in error argues is an instruction that if they did not find the defendant was acting with premeditation, that the defendant must be acquitted or convicted of murder in the second degree.   This argument is not logical as applied to the charge.   The court was instructing the jury as to the different degrees of murder and did not confine the jury to a finding of murder of either degree; it was then dealing with the different degrees of murder, and in another part of his charge he defined manslaughter and assault and battery, and instructed the jury that they might convict of the lesser offences, if they were not satisfied that the defendant was guilty of murder.

The plaintiff in error also insists that the jury were misled by the charge relating to the different degrees of murder, and the argument appears to be based upon the notion that the charge limited the finding of murder of the first degree to acts perpetrated when the defendant was engaged in, or attempting to commit arson, burglary, rape, robbery or sodomy, and that any other kind of willful, deliberate killing was murder in the second degree, and thus the jury were misled and confused.

The conclusion to which the argument of plaintiff in error leads is that he was injured because, as he claims, the court limited the definition of murder in the first degree to a killing, while the accused was perpetrating the acts specifically named, and excluded all other kinds of willful and deliberate

killing. If this be correct, it is difficult to see how such limitation was injurious to the plaintiff in error, for it gave him a benefit to which he was not entitled, but the assumption is not justified; the instruction was not so limited, but included all kinds of willful and deliberate killing. The part of the instructions complained of, omitting so much as is not applicable to the present question, was as follows: "To constitute murder of the first degree, as you see from the reading of this section to which I have called your attention, the murder must be willful, deliberate and premeditated; and this means that there must have existed in the mind of the accused before the act of killing a then present intent to take life, and that intent was so formed, and after being formed was purposely carried out. * * * So, in determining whether the crime alleged to have been committed here was murder in the first or of the second degree, you must remember that the statute requires that the killing must be deliberate, willful and premeditated, in order to make it murder of the first degree. The statute does not say that such willfulness, and such deliberation, and such premeditation, shall have existed in the mind of the accused any fixed length of time before the act of killing; therefore all you need find in order to justify a verdict of murder of the first degree is that the killing was willful, was deliberate and was premeditated, and that such were the conditions of the mind of the accused even for a short time before the crime was committed, but for a time sufficiently long for the accused to fully and fairly conceive the design to kill, and that he did so conceive the design, and that he did then willfully, deliberately and premeditatedly execute that design." This instruction was entirely accurate and is not misleading.

The next point is that no malice was shown. It is enough to say in answer to this that if the killing was perpetrated in an attempt to do a serious bodily injury or to take life, malice is implied.

The next point is that there is no evidence to warrant a finding that the defendant, when he shot the deceased, was committing, or attempting to commit, any of the crimes

enumerated in the statute or any unlawful act against the peace of the state, of which the probable consequence might be bloodshed, and therefore he could only be convicted of the crime described as "all other kinds of murder," which is murder in the second degree. And under this claim it is contended, first, that under the evidence the defendant was not guilty of murder in the second degree, and in the second place, that the defendant went to the place where the killing occurred without criminal purpose or intent, and at the most was a trespasser. The correctness of these contentions depends upon the testimony, and no legal question can be raised, except, perhaps, the refusal to direct a verdict of acquittal, but, manifestly, the court was not required to take any such action under the testimony.

A considerable part of the proof for plaintiff in error is devoted to showing that on the testimony submitted the jury ought not to have convicted him of any offence higher than manslaughter. If they believed the witnesses of the state, they would have been justified in convicting him of murder of the first degree. Their finding ·is not reviewable on writ of error.

It is further contended that the court erred in .refusing to permit testimony showing that one Risk had taken the defendant and others to the factory for the purpose of obtaining possession of it, by advice of his counsel, one Alexander. I think this testimony was quite immaterial, for certainly if what the defendant did was by advice of counsel, such advice would afford no protection nor operate to reduce the grade of his offence. The testimony by which it was sought to show that certain persons known as the Faour brothers were related to the deceased was immaterial and properly excluded.

The instruction given by the court to the jury that if the defendant was standing by and aiding and abetting, or taking part in a scheme to get possession of the property, even at the cost of the life of the decedent, the defendant would be guilty, even if he did not himself fire the fatal shot, was a correct instruction.

The judgment under review should be affirmed.